1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES, ex rel. DEREK
CASADY, NANCY CASADY,et al.,

                         Plaintiffs,

    vs.

AMERICAN INTERNATIONAL
GROUP, INC. et al,

                       Defendants.

CASE NO. 10cv0431-GPC-
(MDD)

**ORDER**

**(1) GRANTING DEFENDANT
AIG'S MOTION TO DISMISS**

**(2) DENYING AS MOOT
COUNTERPARTY
DEFENDANTS MOTIONS TO
DISMISS**

[ECF Nos. 54, 59, 61, 71]

Relators Derek and Nancy Casady ("Relators" or the "Casadys") bring a *qui
tam* suit against Defendants American International Group, Inc. ("AIG"), Merrill
Lynch International and its successor Bank of America ("MLI"), Deutsche Bank,
Goldman Sachs Group Inc. ("Goldman Sachs"), and Societe Generale under the
False Claims Act ("FAC") 31 U.S.C. §3729, *et seq.*  Relators allege that Defendants
operated fraudulently and recovered their losses by filing false claims with the
federal government.  For the following reasons, the Court **DISMISSES** Relators'
first amended complaint.

**PROCEDURAL HISTORY**

The Casadys filed the original complaint under seal on February 25, 2010, and filed the first amended complaint on September 30, 2010.  ECF Nos. 1, 18.   On April 28, 2011, the United States advised the Court of its intention to decline intervention, and the case was unsealed on the same date. ECF Nos. 29-30. Defendants have filed four motions to dismiss Relators' first amended complaint. On October 14, 2011 Defendant Merrill Lynch International filed a motion to dismiss Relators' first amended complaint for insufficient service of process. ECF No. 54.  On the same date, Defendant American International Group, Inc. ("AIG") filed a motion to dismiss with prejudice Relators' first amended complaint for lack of subject matter jurisdiction pursuant to the False Claims Act "public disclosure bar," and failure to state a claim with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b).  31 USC §3730(e)(4).  ECF No. 59.  Separately, Counterparty Defendants Bank of America, Deutsche Bank AG, Deutsche Bank Cayman Islands Branch, Societe Generale, The Goldman Sachs Group, Inc., and Goldman Sachs Bank USA, filed a motion joining Defendant AIG's motion to dismiss. ECF No. 61.  In the same motion, Counterparty Defendants allege additional grounds for dismissal of Plaintiffs' first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 8(a), and 9(b). Id.  On December 12, 2011, Defendant Goldman Sachs International filed a motion to dismiss Relators' first amended complaint for insufficient service of process and failure to prosecute. ECF No. 71.

**BACKGROUND**

This False Claims Act ("FCA") *qui tam* action arises out of the federal government's loan to AIG and it's investors during the 2008 financial crisis.  Under the False Claims Act, any person who defrauds the United States Government is liable for civil penalties. United States ex rel. Biddle v. Bd. of Trustees of Leland

Stanford, Jr. University, 161 F.3d 533, 535 (9th Cir. 1998).  The FCA provides for liability for any person who, among other things, "knowingly presents...a false or fraudulent claim for payment" to the United States government. 31 U.S.C. § 3729 (a).  Although the FCA requires the Attorney General to investigate possible violations, § 3730(a), civil actions under the FCA may be brought either by the United States or as a *qui tam* action by a private person. See Id. § 3730(a), (b). In a *qui tam* action, the private person, the relator, sues on behalf of the government as well as himself. §3730(b)(1). The action must be brought in the name of the government. Id. The government may elect to intervene or may decline to intervene. Id; §3730(b)(2), (4). If the government declines to intervene, the relator has the right to conduct the action. § 3730(b)(4), (c)(3).

**The Parties**

Relators Derek Casady and Nancy Casady are residents of the State of California and bring this action on behalf of the U.S. government. ECF No. 18, hereinafter "First Amended Complaint" or "FAC".  The government has declined to intervene. ECF No. 29.  The Casadys claim that they "obtained information forming the basis of this complaint by direct first-hand examination of information from inside the mortgage industry [and] by conducting first-hand analysis using methods used by certified fraud examiners."  FAC at 31.  Defendant AIG is a Delaware corporation headquartered in New York, and serves as a holding company for numerous subsidiaries engaged in the business of life insurance, retirement services, and property and casualty insurance in the United States and globally. Id. Defendant AIG Financial Products is a financial services subsidiary of AIG which historically engaged in a "diverse range of financial transactions (including derivative transactions), involving commodities, credit, currencies, energy, equities and interest rates. ECF No. 59 at 4.  Defendants Merrill Lynch International (now a wholly owned subsidiary of Bank of America Corporation), Bank of America Corporation, Deutsche Bank, Goldman Sachs, and Societe General are additional

1   defendants that the Casadys assert engaged in fraudulent business transactions with

2   Defendant AIG. FAC at 12-27.  For purposes of this order, these Defendants shall

3   be known as the Counterparty Defendants.

4   **Factual Allegations**

5         The Casadys attempt to chronicle one of the most widely publicized global

6   financial disasters that resulted in the historic government "bailouts" to address the

7   crisis. The Casadys allege that Defendant AIG and Counterparty Defendants

8   conspired to defraud the government by making false claims to secure financial

9   assistance. FAC ¶¶ 2-4.  The Casadys assert that Defendant AIG made false claims

10  to induce the government to issue three loans made by the Federal Reserve Board of

11  New York ("FRBNY") to AIG: 1) an emergency $85 billion loan made in

12  September 2008, 2) an emergency $22.5 billion loan known as Maiden Lane II

13  Loan, and 3) an emergency $30 billion loan known as the Maiden Lane III Loan. Id.

14  The Casadys thoroughly review the history of AIG and the financial crisis, and the

15  actions that Defendants took leading up to the federal government's financial

16  assistance to AIG.

17        The Casadys allege that AIG engaged in a "long course of fraudulent

18  practices designed to load up AIG's financial statements with assets with inflated,

19  false values." Id. at 9.  Relators assert that Defendants knowingly perpetrated fraud

20  on the Government by using these false statements to induce the Government to

21  extend financial support to AIG. FAC ¶¶ 2-4.  To support the allegations of fraud,

22  the Casadys cite three Securities and Exchange Commission fraud injunctions, two

23  U.S. Department of Justice criminal prosecutions, and lay out AIG's practice of

24  selling high risk residential mortgage backed securities (RMBS) and insuring high

25  risk collateralized debt obligations (CDOs).  FAC at 10-32.  Relators assert that

26  Counterparty Defendants Goldman Sachs, Deutsche Bank, Societe Generale, and

27  Merrill Lynch International lent money to AIG to help facilitate AIG's purchase of

28  RMBS which, in turn, supported the inflated market value of collateralized debt

1  obligations (CDOs). Id.  As a result of these investments and exchanges, according
2  to the Relators, AIG suffered a liquidity crisis.  FAC ¶¶ 39, 155, 160.  The Casadys
3  further allege that AIG engaged in numerous fraudulent and unlawful business
4  practices leading up to the government issuance of loans.  FAC ¶ 97. To support
5  these allegations, Plaintiffs reference previous criminal prosecutions against AIG
6  for federal securities fraud and the subsequent settlement agreements.  FAC ¶ 100-
7  108.  The Casadys further assert that AIG and other Counterparty Defendants
8  submitted false statements and failed to disclose accurate financial statements to the
9  federal government, which caused the government to issue the loans.  FAC ¶¶  130-
10  143, 171, 174, 179, 180, 183, 186, 189, 192.  Relators also allege that AIG and
11  Counterparty Defendants "engaged in a pattern of fraud whereby the multi-sector
12  CDOs were underwritten with par values that substantially and materially exceeded
13  their actual values."  FAC ¶ 200.  Relators assert that Defendants knowingly
14  presented the false claims to the U.S. government, conspired to defraud the
15  government and misrepresented facts to the government to obtain payment of the
16  "bailout" funds.  FAC ¶ 205-212.  The Casadys assert these claims against AIG and
17  each Counterparty Defendant. FAC ¶ 212-264.  Relators pray for relief in the form
18  of damages three times the amount damages sustained by the federal government as
19  a result of the false claims, as well as reasonable attorneys' fees, costs, and
20  expenses, and maximum amount to the Plaintiffs permitted by the False Claims Act.
21  FAC at 77.

22
23                                **DISCUSSION**
24      The Casadys' first amended complaint is dismissed based on the court's lack
25  of subject matter jurisdiction pursuant to 31 U.S.C. § 3730 (e)(4)(A) and failure to
26  state a fraud claim with sufficient particularity under Fed. Rule Civ. P. 9(b).
27  **Public Disclosure Bar**
28      "Congress enacted the False Claims Act to 'enhance the Government's ability

to recover losses sustained as a result of fraud against the Government.'" <u>United States ex rel. Barajas v. Northrop Corp.</u>, 5 F. 3d 407, 409 (9th Cir. 1993). A district court's jurisdiction over false claims actions is limited by the provisions of the FCA. "In making its determination the district court may resolve factual disputes based on the evidence presented where the jurisdictional issue is separable from the merits of the case." <u>United States ex rel. Biddle v. Board of Trustees of the Leland Stanford, Jr. University</u>, 147 F.3d 821 (9th Cir. 1998). "[N]o court shall have jurisdiction over an action under this section *based upon the public disclosure* of allegations or transactions in a criminal, civil, or administrative hearing...or from the news media, unless the action is brought by the Attorney General *or* the person bringing the action is an *original source* of the information." 31 U.S.C. § 3730 (e)(4)(A)(emphasis added). An original source means "an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section. 31 U.S.C.A. § 3730(e)(4(B). "A relator's allegations are 'based upon' publicly disclosed information when 'the allegations or transactions of the complaint have been publicly disclosed.'" <u>U.S. ex rel. Aflatooni v. Kitsap Physicians Services</u>, 163 F.3d 516, 521 (9th Cir. 1999)(quoting <u>Biddle</u>, 147 F.3d at 821).[1] "The publicly disclosed facts need not be identical with, but only substantially similar to, the

---

[1] In <u>Biddle</u>, the Ninth Circuit reasoned that "where the relator brings new information of fraud to the government, the relator should be rewarded regardless of how the relator came into possession of that information. The reason is that the allegations in the complaint, being previously undisclosed, are valuable to the government in remedying the fraud that is being committed against it. On the other hand, where the allegations of the fraud are already public knowledge, the relator confers no additional benefit upon the government by subsequently repeating the fraud allegations in the complaint. The relator should be rewarded only if he was an original source of the information." <u>Biddle</u>, 147 F.3d at 821.

1   relator's allegations." <u>U.S. ex rel. Meyer v. Horizon Health Corp.</u>, 565 F.3d

2   1195,1199 (9th Cir. 2009).   Moreover, the relator has the burden of establishing

3   subject matter jurisdiction by a preponderance of the evidence. <u>U.S. ex rel.</u>

4   <u>Harshman v. Alcan Elec. & Eng'g, Inc.</u>, 197 F.3d 1014, 1018 (9th Cir.1999).

5          The Court finds that the Casadys have failed to demonstrate by a

6   preponderance of the evidence that the allegations are not "based upon" publicly

7   disclosed information.  As described in the background section above, much of the

8   Casadys first amended complaint reviews the history of the 2008 financial crisis,

9   with a focus on the government's financial assistance to AIG.  In the motion to

10  dismiss, AIG accurately observes that most of the Casadys' first amended complaint

11  tells the same story already reported by the government and the news media.  ECF

12  No. 59 at 26.  The Court agrees.  In reviewing the FAC, the Court finds that most of

13  the information relied upon by the Casadys has been made publicly available.  As a

14  starting point, the FAC contains 49 foot notes that cite public sources and at least 56

15  paragraphs include direct quotes from public sources. <u>See</u> ECF No. 59 at 17-18.  An

16  additional 15 paragraphs have language pulled directly from public documents but

17  not attributed to those sources. <u>Id</u>.  In sum, the publicly available information used

18  in the FAC comprises over one-third of the operative paragraphs.

19         Where the relators do not rely on publicly available information, they

20  describe in very general terms the structure of AIG, the history of the RMBS and

21  CDS market, securities fraud issues, and some background on the Counterpart

22  Defendants.  As AIG points out, even much of the narrative descriptions are derived

23  from publicly available information. <u>Id</u>. at 30 ("The generic discussion of the CDS

24  contracts, for example, restates facts...cuts and pastes a chart directly from [a

25  previously published] article.") The Court cannot find any new, non-publicly

26  sourced information in the FAC about AIG or the Counterparty Defendants, or facts

27  regarding how the Defendants sought to implement a scheme to defraud the

28  government.  Although the Casadys make frequent allegations that AIG's actions

constitute fraud, they have failed to provide specific facts that are not based on publicly available information to support their conclusory assertions of fraud.

In its' opposition briefing, the Casadys assert that their claim is not based upon public disclosures. ECF 73 (hereinafter "Opp."). First, the Casadys contend that "nothing in the public domain disclosed the true state of facts." Opp. at 32. Those "true facts" include (1) "the parties were not pushing to enforce the collateral call provisions of the CDS..."; (2) "AIG knew it was not experiencing liquidity problems, but rather, AIG and the co-defendants had used pervasive fraudulent practices to falsely inflate the AIG-insured CDOs..."; and (3) AIG management made the promise to pay the $85 billion loan to the FRBNY...[but] knew its representations to obtain the loan were false." Id. These arguments are flawed for several reasons. First, the Casadys cannot merely add the words "false claim" or "fraud" or assert "previous knowledge" to information that has already been previously disclosed in order to escape the public disclosure bar. The public disclosure bar does not require the allegations to be precisely the same as the publicly disclosed information. U.S. ex rel. Found. Aiding the Elderly v. Horizon West, Inc., 265 F.3d 1011, 1014 (9th Cir. 2001)("The substance of the disclosure...need not contain an explicit 'allegation' of fraud, so long as the material elements of the allegedly fraudulent 'transaction' are disclosed in the public domain.") For this reason, the Casadys' assertion that the "right words are missing" from the disclosures and that the public information did not call the conduct "fraud" or "false claims" fails to withstand the public disclosure bar.

Finally, the Casadys contend that their analysis of "millions of data points" included a review of congressional reports, hearings, AIG mortgages, and other government and public documents. Opp. at 4, 36, 38-40. As such, Relators contend the public disclosure bar should not prevent the FCA claim because the documents were "raw data," and further their analysis revealed "that AIG and counterparty defendants submitted false claims to the government...this information cannot be

found in any document rendering it a public disclosure." Id. at 41. The fact that public documents may be presented in a data format does not exclude it as a "disclosure" within the meaning of 31 U.S.C. § 3730(e)(4)(A). See also U.S. ex rel. Fine v. Sandia Corp., 70 F.3d 568, 572 (10th Cir. 1995)("If a relator merely uses his or her unique expertise or training to conclude that the material elements already in the public domain constitute a false claim, then a *qui tam* action cannot proceed."); A-1 Ambulance Serv., Inc. v. California, 202 F.3d 1238, 1245 ("the mere fact that [relator's] own expertise in the area… may have enabled it to formulate its novel legal theory of fraud is irrelevant"). The above cases lead to the conclusion that Relators cannot escape the public disclosure bar by basing a fraud claim on their review of government and public documents.

**Original Source of Information**

Having failed to show that the FCA claim is not based upon public disclosures, the Casadys must then prove that they are the original source of the information. 31 U.S.C. § 3730 (e)(4). The Court finds that the Casadys have failed to meet this burden. To qualify as an original source, a relator must show that he or she has "direct and independent knowledge of the information on which the allegations are based," 31 U.S.C. § 3730(e)(4)(B), "voluntarily provided the information to the Government before filing" his or her *qui tam* action, id., and "had a hand in the public disclosure of allegations that are a part of [his or her] suit" Wang v. FMC Corp., 975 F.2d 1412, 1418 (9th Cir.1992); U.S. ex rel. Devlin v. State of Cal., 84 F.3d 358, 360 (9th Cir. 1996) (holding the relators' knowledge was not direct and independent because they did not discover firsthand the information underlying their allegations of fraud). The Casadys must be able to "point to [] evidence in the record that would allow a reasonable factfinder to conclude that he would have learned of the allegation or transactions independently of the public disclosures." U.S. ex rel. Feingold v. AdminaStar Federal, Inc., 324 F.3d 492, 497 (7th Cir. 2003) (holding that the relator was not an original source even though he

asserted that he had gathered the information "through his own investigation").

The Casadys allege in a conclusory fashion that they and their counsel are the "original source of the information forming the basis of the complaint," including "direct first-hand examination of information from inside the mortgage industry." FAC ¶¶ 30-31.  The Casadys further assert, without any specifics, that they were the original source of the information because they have knowledge "independent of and materially adds to any publicly disclosed allegations or transactions and have voluntarily provided the information to the Government before filing this false claims action."  FAC ¶ 32.  The law does not permit the Casadys to rely on information from either a third-party insider from the mortgage industry or their attorney to qualify as an original source of information. See United States v. New York Med. Coll., 252 F.3d 118, 121 (2d Cir. 2001) (a relator is not an original source if "a third party is the source of the core information upon which the qui tam complaint is based")(citation and internal quotation marks omitted); Devlin, 84 F.3d at 361 (finding no direct knowledge where the relators "did not see the fraud with their own eyes or obtain their knowledge of it through their own labor unmediated by anything else, but derived it secondhand").  Apart from conclusory statements or allegations that they relied on third parties, nowhere else in the amended complaint do the Casadys plead direct or independent knowledge of the alleged fraud.  For these reasons, the Court finds that the Casadys have failed to state that they are the original source of information within the meaning of 31 U.S.C. 3730(e)(4)(B).

As the Casadys have relied on publicly disclosed information, and failed to show they are the original source of the information, the Court finds that it lacks subject matter jurisdiction pursuant to 31 U.S.C. § 3730 (e)(4)(A).  The Court therefore **GRANTS** Defendant AIG's motion to dismiss against all defendants.

Although the Court finds dismissal warranted for lack of subject matter jurisdiction, the Casadys will have an opportunity to amend their complaint to cure the deficiencies noted.  Thus, the Court will briefly address alternative bases for

1   dismissal raised in Defendants' motions.

2   ///

3   **Failure to State a Claim with Sufficient Particularity**

4       "To survive a motion to dismiss, a complaint must contain sufficient factual

5   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

6   Ashcroft v. Iqbal,129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 547).

7   A claim is facially plausible when the factual allegations permit "the court to draw

8   the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

9   In other words, "the non-conclusory 'factual content,' and reasonable inferences

10  from that content, must be plausibly suggestive of a claim entitling the plaintiff to

11  relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

12  Furthermore, in alleging fraud or mistake, a party must state with particularity the

13  circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b).  It is well

14  established that the heightened pleading requirements of Rule 9(b) apply to FCA

15  claims "because 'insiders privy to a fraud on the government' should have adequate

16  knowledge of the wrongdoing at issue." Bly-Magee v. California, 236 F.3d 1014,

17  1019 (9th Cir. 2001).  To survive a motion to dismiss, plaintiffs must identify "the

18  who, what, when, where, and how of the misconduct charged, as well as what is

19  false or misleading about statement and why it is false."  Cafasso, U.S. ex rel. v.

20  General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011).  Rule 9(b)

21  "clearly impose[s] an additional obligation on plaintiffs: the statement of the claim

22  must also aver with particularity the circumstances constituting the fraud." Yourish

23  v. California Amplifier, 191 F.3d 983, 994 (9th Cir. 1991)(quoting In re GlenFed

24  Sec. Litig., 42 F.3d 1541, 1545 (9th Cir. 1994).  The particularity requirement is

25  intended to enable the defendant to respond specifically and quickly to the

26  potentially damaging allegations. Abels v. Farmers Commodities Corp., 259 F. 3d

27  910, 920-21 (8th Cir. 2001).  Rule 9(b) also serves "to deter the filing of complaints

28  as a pretext for the discovery of unknown wrongs, to protect [defendants] from the

1  harm that comes from being subject to fraud charges, and to prohibit plaintiffs from
2  unilaterally imposing upon the court, the parties and society enormous social and
3  economic costs absent some factual basis." In re Stac Elec. Sec. Litig., 89 F.3d
4  1399, 1405 (9th Cir. 1996).

5       The Court finds that the Casadys' first amended complaint fails to meet the
6  standard required to state a claim with sufficient particularity under Fed. R. Civ. P.
7  9(b). Relators' first amended complaint largely summarizes publicly disclosed facts
8  regarding the 2008 financial crisis and federal assistance to AIG. After detailing
9  facts regarding the government issued loans to AIG, and AIG's history leading up to
10 the loans, the Casadys merely allege that these actions "constitute fraud," and that
11 the "government relied on [AIG's] false claims." The Relators fail to provide any
12 facts that these statements were actually false or that the government's reliance on
13 the false statements resulted in the subsequent loans.  The amended complaint
14 provides no detail as to what the false claims or statements are, much less as to the
15 who, where, when and how of the allegedly fraudulent scheme. As such, the
16 amended complaint fails to put Defendants on notice so they can adequately prepare
17 their defense.  For these reasons, the Court finds that the Relators' amended
18 complaint fails to satisfy the particularity requirement for fraud claims pursuant to
19 Fed. R. Civ. P. 9(b).

20 **Improper Service**

21      Federal Rule of Civil Procedure 4(h) requires service on a corporation to be
22 effected by "delivering a copy of the summons and of the compliant to an officer, a
23 managing or general agent, or to any other agent authorized by appointment of by
24 law to receive service of process." Pursuant to Federal Rule of Civil Procedure
25 12(b)(5), "a complaint may be dismissed for insufficient service of process." When
26 service of process is challenged, the Plaintiff bears the burden of proving its validity
27 or good cause for failure to effect service. Sys. Signs Supplies v. U.S. Dept. of
28 Justice, 903 F.2d 1011, 1013 (5th Cir. 1990).

Defendant Merrill Lynch International ("MLI") contends that the manner of service of process was defective because Plaintiffs failed to serve an agent who is authorized to accept service on behalf of MLI. ECF No. 54. Rather, Plaintiffs served Merrill Lynch International, *Inc*., a different legal entity than MLI, and not a named Defendant in the present lawsuit.  MLI further asserts that service was defective for failure to effectuate proper service within 120 days as required by Fed. R. Civ. P. 4(m).  Defendant points out that Plaintiffs served a summons for Merrill Lynch International, *Inc*. upon Mr. Scott LaScala of The Corporation Trust Company ("CT Corp."), a registered agent company which provides an agent and address for service of process for its customers.  Id. Exhibit A, Declaration of Scott LaScala. According to Mr. LaScala's sworn statement, CT Corp. is not authorized to receive service of process on behalf of MLI, nor has CT Corp. received an attempted service of process on MLI in connection with this case. Id.  Mr. LaScala did receive service of process on Merrill Lynch International *Inc*., a different legal entity than Merrill Lynch International, in connection with this case. Id.  As such, Defendant MLI asks the Court to dismiss the case due to the Relators' failure to effectuate proper service.

Defendant Goldman Sachs International (GSI) also seeks to dismiss the complaint due to insufficient service of process. ECF No. 71.  Defendant GSI states that service was improperly rendered upon Goldman, Sachs & Co., a distinct legal entity from GSI.  Id. at 1.  According to the proof of service filed by the Casadys, ECF No. 66, the summons and Complaint were "served by Electronic Service" on an employee of Goldman, Sachs & Co. Id.  GSI explains that no employee of Goldman Sachs & Co., a distinct legal entity, is a registered agent authorized to receive service of process on behalf of GSI. Id.  Defendant GSI also objects to the form of service, contending that electronic service of summons is insufficient to effect service of process. Id. (citing Mapping Your Future, Inc. V. Mapping Your Future Services, Ltd., 266 F.R.D. 305, 307-8 (plaintiff could not effect service of

process via email on corporation located in a territory of the U.K.); <u>U.S. v. Seventy-One Firearms</u>, 2006 WL 1983240 (D. Nev. July 13, 2006) (finding that Rule 4 does not contemplate electronic service)).

Relators respond that they have properly served Defendants Merrill Lynch International and GSI, and that these defendants are merely attempting to evade service of process. ECF Nos. 75, 77.  The Court disagrees.  Relators provide no facts that would support the conclusion that Merrill Lynch International or GSI were properly rendered service.  As previously stated, the Defendants make clear that the Relators served the wrong legal entities upon people who were not authorized agents on behalf of the Defendants.  Relators state that they attempted to effectuate personal service of process upon GSI employees but were denied entry into the building twice because the employees were not registered agents, and that this constitutes evasion of service. ECF No. 77 at 7-8.  However, nothing in the record supports the contention that GSI has evaded service.  The Court notes that over a year and a half has passed since the Relators were made aware of the failure to properly serve.  As the Relators do not offer a plausible explanation for improper service, the Court finds that the Relators have not shown good cause for failure to effectuate service upon these defendants.  Should the Casadys choose to file an second amended complaint, the Court instructs Plaintiffs to render proper service upon all defendants.  Failure to do so will result in dismissal pursuant to Fed. R. Civ. P. 4(h).

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Defendant AIG's motion to dismiss (ECF No. 59) and **DISMISSES** the first amended complaint in its entirety **WITHOUT PREJUDICE**.  The remaining motions to dismiss (ECF Nos. 54, 61, 71) are **DENIED AS MOOT**.

If the Casadys wish, they SHALL FILE a second amended complaint within

1   twenty-one days of the date this Order is electronically docketed.  Failure to file an

2   amended complaint by this date may result in dismissal with prejudice.

3          **IT IS SO ORDERED.**

4

5   DATED:  April 19, 2013

6

7                                              HON. GONZALO P. CURIEL
                                               United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28